1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9   JONAS DAVID SMITH,                          CASE NO. 1:08-cv-01792-LJO-SMS PC

10                                              FINDINGS AND RECOMMENDATIONS
                        Plaintiff,              RECOMMENDING THAT THE DISTRICT
11                                              COURT GRANT DEFENDANTS' MOTION TO
                                                DISMISS FOR FAILURE TO STATE A CLAIM
12      v.                                      AND DENY DEFENDANTS' MOTION TO
                                                STRIKE AS MOOT IN LIGHT OF DISMISSAL
13   GEORGINA PUENTES, et al.,                  OF COMPLAINT
14
                                                (Doc. 17)
15                      Defendants.
                                          /     OBJECTIONS DUE WITHIN THIRTY DAYS
16

17           **Findings and Recommendations on Defendants' Motion to Dismiss**
18   **I.      Procedural and Factual Background**
19
             Plaintiff Jonas David Smith, a former federal prisoner at Taft Correctional Center
20
     ("TCI"),  proceeds pro se in this civil action pursuant to *Bivens v. Six Unknown Named Agents of*
21
     *Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which provides a remedy for violation of
22
     civil rights by federal actors.[1]  Plaintiff also alleges claims for intentional infliction of emotional
23
     distress and negligent hiring and supervision under California law.  Plaintiff filed his first
24
     amended complaint on February 19, 2009 (doc. 7).  On March 20, 2009, defendants filed a
25
     ///
26

27   _____

28           [1] Plaintiff also denominates his action as arising under 42 U.S.C. § 1983.  Because plaintiff does not allege
     liability against any state actors, § 1983 does not apply.

                                                      1

1   motion to dismiss the complaint under F.R.Civ.P. 12(b)(6) and a motion to strike the punitive

2   damages claim under F.R.Civ.P. 12(f) (doc. 17).[2]

3       **Facts Alleged in Complaint.**   Plaintiff entered TCI on August 5, 2005.  Before his

4   incarceration, plaintiff injured his back and neck.  Accordingly, Nedukwe Odeluga, M.D., a TCI

5   physician, restricted plaintiff's activities, prescribing no food service, a lower bunk with a second

6   mattress, no stair or ladder climbing, and no lifting of objects weighing more than fifteen pounds.

7   Odeluga prescribed Naproxen[3] for pain.

8       Despite plaintiff's medical restrictions, he was assigned to work as an orderly in the

9   power house, responsible for unspecified care of the building's interior and exterior, including

10  the sewage grinder.  Plaintiff's job aggravated his pre-existing back and neck injuries. On

11  October 27, 2005, plaintiff saw the nurse and complained of increased back pain, a sharp pain in

12  his right shoulder blade, and numbness in his right arm and hand.  The nurse advised plaintiff

13  that no doctor's appointment was available for at least four weeks. (The complaint does not

14  disclose whether plaintiff was given an appointment or later saw a doctor.)  On November 8 and

15  14, 2005, complaining of flu-like symptoms and continued neck, arm, hand, shoulder, and lower

16  back pain, plaintiff again saw the nurse.  Each time that plaintiff reported to sick call, he was able

17  only to see a nurse, not a doctor, and each time, the nurse advised plaintiff that she was not

18  authorized to grant him sick leave from his job.  During the third visit, the nurse suggested that

19  plaintiff discuss violations of his medical restrictions with his prison counselor.

20      Plaintiff's unnamed girlfriend is a physician.  When she visited on November 4 and 5,

21  2005, she examined plaintiff by feeling his neck and back through his clothing.  Plaintiff alleges

22  that the examination was observed by a guard stationed within fifteen feet of the couple but no

23  ///

24  ///

25

26      [2]  Plaintiff moved to suppress defendants' reply brief as untimely under L.R. 78-230(m). This court has
27  neither read nor considered defendants' reply brief.

28      [3]  Naproxen is a nonsteroidal anti-inflammatory drug prescribed for treatment of pain and inflammation.
    Common brands include Aleve and Anaprox.  *See* http://www.drugs.com/naproxen.html.

incident report was filed.  On November 9, 2005, plaintiff's girlfriend wrote to Dr. Odeluga, reporting plaintiff's neck and back pain, and indicating her concern that permanent injury could result.

On November 13, 2005, plaintiff file a request for extended visitation with his girlfriend when she visited on December 2 and 3, 2005.  The complaint alleges that plaintiff received no response, but discloses nothing further.

On November 21, 2005, plaintiff met with his counselor, defendant Oliver.  Oliver re-assigned plaintiff to another orderly position, which only required plaintiff to clean sinks.

On December 2, 2005, plaintiff's girlfriend arrived at TCI and was denied visitation.  She contacted Oliver, who did not provide a reason for her removal from plaintiff's visitor list.  After plaintiff learned that his girlfriend was denied visitation, defendant Soto, plaintiff's unit manager, advised him that his girlfriend had been removed from the visitor list because of her letter to Dr. Odeluga.

Thereafter, plaintiff filed an administrative appeal which was denied at all levels.  The complaint does not disclose the content of plaintiff's grievance.

Plaintiff also secured a letter to prison administrators from Senator Patty Murray, advocating for plaintiff's health care and visitation rights.

Plaintiff's girlfriend was not permitted to visit until May 11, 2006, nearly six months later.  According to plaintiff, his girlfriend's visitation rights were only reinstated after he threatened to file federal civil rights litigation.

In addition to defendants Soto and Oliver, plaintiff names as defendants Georgina Puentes, TCI camp administrator and assistant warden;  Bernard Ellis, TCI warden;  Dale Patrick, TCI administrative remedy coordinator;  and The GEO Group, Inc., TCI's corporate operator.

**II.**     **Standard of Review – Rule 12(b)(6) Motion to Dismiss**

"The focus of any Rule 12(b)(6) dismissal . . . is the complaint." *Schneider v. California Dept. of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998).  A court may not look outside of the

pleadings to resolve the motion.[4]  In considering a motion to dismiss for failure to state a claim, a court must accept as true the allegations of the complaint in question, construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740 (1976); *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a).  Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949, *quoting Twombly*, 550 U.S. at 555.

While factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 129 S.Ct. at 1949.  The statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512. The court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended by* 275 F.3d 1187 (2001).

Plaintiff's amended complaint fails at this elementary level.  Plaintiff's claims are vague and unsupported, and, for the most part, fail to identify which defendants are liable for each alleged violation and what facts support that liability.  The complaint sets forth few factual allegations and does not tie those facts to its legal claims.  As a result, the court is left to guess

---

[4] Plaintiff has moved to strike the declaration of Dale Patrick as improper in a motion to dismiss under F.R.Civ.P. 12(b)(6).  Because a court reviewing a motion to dismiss may not consider matter outside the complaint, Patrick's declaration is improper in a Rule 12(b)(6) motion. *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1482 (9th Cir. 1991). This court has neither read nor considered Patrick's declaration.

1  what each claim is really about.  Because of the total absence of facts to support each conclusory

2  legal claim, plaintiff's amended complaint includes no federal civil rights claim on which relief

3  may be granted.

4  **III.   _Bivens_ Claims**

5       A *Bivens* cause of action is a judicially created counterpart to 42 U.S.C. § 1983 for claims

6  against federal officers.  Since federal officials do not ordinarily act under color of state law,

7  constitutional violations by federal officials are generally beyond the reach of § 1983.  In *Bivens,*

8  the Supreme Court established that "victims of a constitutional violation by a federal agent have

9  a right to recover damages against the official in federal court despite the absence of any statute

10  conferring such a right."  *Bivens*, 403 U.S. at 396.

11      Like state prisoners suing under 42 U.S.C. §1983, federal prisoners pursuing relief under

12  *Bivens* may sue relevant officials in their individual capacity only.  Although the *Bivens* doctrine

13  provides for private rights of action for violations of the Fourth Amendment, *Bivens*, 403 U.S. at

14  388, the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980), and the Fifth Amendment

15  Due Process Clause, *Davis v. Passman*, 442 U.S. 228 (1979), the U.S. Supreme Court has been

16  reluctant to extend *Bivens* to claims where Congress has already provided "an avenue for some

17  redress." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68-69 (2001)(declining to infer a

18  constitutional court remedy against a private corporation); *Libas, Ltd. v. Carrillo*, 329 F.3d 1128,

19  1130 (9th Cir. 2003)(precluding *Bivens* claims where Congress has provided an alternative

20  remedy).

21      **Private Correctional Corporations.**  In *Malesko*, the Supreme Court addressed a *Bivens*

22  claim against a private prison contractor for an Eighth Amendment violation.  The Court noted

23  that it had previously declined to extend *Bivens* to permit suit against a federal agency, even

24  though the agency was otherwise amenable to suit.  *FDIC v. Meyer*, 510 U.S. 471, 484 (1994).  If

25  a federal agency is not amenable to a *Bivens* action, the Court reasoned, allowing a plaintiff to

26  initiate a *Bivens* action against a private corporation contractually providing services pursuant to

27  a contract with that federal agency would inappropriately extend *Bivens*. The Court opined:

28  ///

> [T]he claim urged by respondent is fundamentally different from anything recognized in *Bivens* or subsequent cases.  In 30 years of *Bivens* jurisprudence we have extended its holding only twice, to provide an otherwise nonexistent cause of action against *individual officers* alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct.  Where such circumstances are not present, we have consistently rejected invitations to extend *Bivens*, often for reasons that foreclose its extension here.

*Malesko*, 534 U.S. at 70.

The Court held that a *Bivens* claim for damages may not be brought against a private corporation.  *Malesko*, 534 U.S. at 63.  Accordingly, plaintiff's *Bivens* claim fails as a matter of law.  GEO is entitled to dismissal of the *Bivens* claims against it, with prejudice.

**Employees of Private Correctional Corporations.**  In *Malesko*, the Court did not reach the question of the liability of employees of a private correctional corporation.  The only circuit courts that have addressed the issue since *Malesko* are the Tenth Circuit and the Fourth Circuit.  Both courts, following *Malesko*, declined to extend *Bivens* to hold individual employees of a private corporation liable.

In *Peoples v. CCA Detention Centers*, the Tenth Circuit refused to recognize a *Bivens* claim against individual employees of a private corporation holding pretrial detainees pursuant to a contract with the federal government.  *Peoples v. CCA Detention Centers*, 422 F.3d 1090 (10th Cir. 2005), *opinion vacated in part on rehearing*, 449 F.3d 1097 (10th Cir. 2006), *cert. denied*, 549 U.S. 1056, 1063 (2006).  Following the reasoning in *Malesko*, the Tenth Circuit concluded that the *Bivens* holding was intended only to provide an otherwise nonexistent cause of action against individual officers or to provide a cause of action  for a plaintiff who lacked any alternative remedy.  *Peoples*, 422 F.3d at 1099-1100.  Because the plaintiff in *Peoples* had an alternative remedy, the court concluded that extending *Bivens* was inappropriate.

In *Holly v. Scott*, 434 F.3d 287 (4th Cir.), *cert. denied*, 547 U.S. 1168 (2006), the Fourth Circuit reiterated that the purpose of *Bivens* was to deter individual federal officers from committing constitutional violations.  The court observed that employees of a private corporation under contract with the federal government were not "federal officials, federal employees, or

///

1  even independent contractors in the service of the federal government.  Instead, they [we]re

2  employed by GEO, a private corporation." *Holly*, 434 F.3d at 292.

3          The court emphasized that, in the context of constitutional claims raised under 42 U.S.C.

4  § 1983, courts have insisted that as a prerequisite to liability, the "conduct allegedly causing a

5  deprivation of a right be fairly attributable to the state." *Id.*, *quoting Lugar v. Edmonson Oil Co.*,

6  457 U.S. 922, 937 (1982).  In *Holly*, nothing suggested that "the federal government [had] any

7  stake, financial or otherwise, in GEO.  Nor [was] there any suggestion that federal policy played

8  a part in defendants alleged failure to provide adequate medical care, or that defendants colluded

9  with federal officials in making relevant decisions." *Holly*, 434 F.3d at 292.

10         Because *Bivens* is a judicial creation, the Fourth Circuit was reluctant to extend it.  *Id.*

11 The court observed that "the danger of federal courts' failing 'to respect the limits of their own

12 power' increases exponentially" with the extension of *Bivens* under the facts of the case.  *Holly*,

13 434 F.3d at 292, *quoting Lugar*, 457 U.S. at 936-37.

14         Plaintiff's brief ignores the holdings of *Peoples* and *Holly*, instead relying on two of the

15 district court cases addressing this question: *Sarro v. Cornell Corrections, Inc.*, 248 F.Supp.2d

16 52, 62-63 (D.R.I. 2003),[5] and *Jama v. U.S. Immigration and Naturalization Service*, 334

17 F.Supp.2d 662 (D.N.J. 2004), both of which extended *Bivens* liability to employees of private

18 correctional corporations.      Relying largely on cases predating *Malesko*, the *Sarro* court, in

19 particular, emphasized that the prison employees were properly held liable because they were

20 fulfilling "public functions."

21         How the Ninth Circuit will resolve this question is an open issue.  In *Agyeman v.*

22 *Corrections Corp. of Amer.*, 390 F.3d 1001 (9th Cir. 2004), *cert. denied*, 545 U.S. 1128 (2005),

23 the Ninth Circuit observed that *Bivens* claims could be brought against individuals employed by

24 CCA.  Because the Ninth Circuit did not analyze the issue but only referred to such liability in an

25 example of the complexity of the pending case, Agyeman's value as precedent is questionable.

26 ///

27 ───────────────────

28      [5] Another Rhode Island District Judge disagreed with his colleague's extension of *Bivens* liability to the
employees of private correctional corporations.  *See LaCedra v. Donald W. Wyatt Detention Facility*, 334 F.Supp.2d
114, 136-37 (D.R.I. 2004).

1 | *See also Cox v. Ashcroft*, 603 F.Supp.2d 1261 (E.D.Cal. 2009)(refusing to resolve the liability of

2 | employees of a private correctional corporation where complaint failed to state a cognizable

3 | claim).

4 |      The uncertainty is magnified by the Ninth Circuit's recent two-step analysis by which it

5 | concluded that *Bivens* liability should not be extended to allow the plaintiff to bring a *Bivens*

6 | action against federal employees, officers of the U.S. Forest Service, for actions allegedly

7 | violating the First and Fifth Amendments. *Western Radio Services Co. v. U.S. Forest Service*,

8 | 578 F.3d 1116 (9th Cir. 2009). Emphasizing that the Supreme Court has refused to extend *Bivens*

9 | liability to any new context or category of defendants since *Carlson*, the Ninth Circuit applied the

10 | *Malesko* criteria, (1) availability of an available, alternative remedy and (2) "factors counseling

11 | hesitation before devising . . .an implied right of action" in the absence of a statutory remedial

12 | scheme," and declined to extend *Bivens* liability. *Western Radio Services*, 578 F.3d at 1120-21

13 | (*internal citation and quotation marks omitted*).

14 |      As was the case in *Cox*, this court need not reach a conclusion. Because the complaint

15 | fails to state any cognizable *Bivens* action, it need not reach this issue.

16 | **Hearing Officers.** In paragraph 29 of the complaint, plaintiff alleges that defendant

17 | Ellis, the warden of TCI, denied his administrative appeal at the final level. Liability in a civil

18 | rights action may not be based on the actions of prison personnel in reviewing a prisoner's

19 | administrative appeal. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.), *cert. denied*, 488 U.S. 898

20 | (1988); *Lewis v. Ollison*, 571 F.Supp.2d 1162, 1170 (C.D.Cal. 2008). *See also Buckley v.*

21 | *Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). Even if a plaintiff's underlying complaint gives rise

22 | to a constitutional violation, a hearing officer or other person does not violate the Constitution by

23 | failing to acknowledge and cure it. *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007). *See*

24 | *also Greeno v. Daley*, 414 F.3d 645, 656-57 (7th Cir. 2005) (refusing to impose liability on

25 | complaint examiners who process and investigate plaintiffs' grievances); *Reed v. McBride*, 178

26 | F.3d 849, 851-52 (7th Cir. 1999) (holding that supervisors who negligently fail to detect and

27 | prevent misconduct are not constitutionally liable); *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir.

28 | 1996), *cert. denied,* 520 U.S. 1230 (1997) (imposing liability only if hearing official caused or

participated in constitutional violation). "A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." *George*, 507 F.3d at 609-10. Because constitutional claims against individuals who merely served as hearing officers do not state a cause of action, Ellis is not liable for any violations of plaintiff's civil rights arising out of his actions as a hearing officer.

**Administrators and Supervisors.** Defendants Ellis and Puentes are TCI administrators or supervisors. Administrative and supervisory personnel are not liable under *Bivens* for the actions of their employees under a theory of *respondeat superior*. *Iqbal*, 129 S.Ct at 1948-49; *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). For defendants in supervisory positions, a plaintiff must specifically allege a causal link between each defendant and his claimed constitutional violation(s). *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979). To state a claim for relief for supervisory liability, plaintiff must allege facts indicating that each supervisory defendant either personally participated in the alleged deprivation of the plaintiff's constitutional rights, knew of the violations and failed to act to prevent them, or promulgated or "implemented a policy so deficient that the policy 'itself is a deprivation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (*internal citations omitted*); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Accordingly, liability against Ellis and Puentes must be based on more than the actions of other GEO employees.

In paragraph 33 of the complaint, plaintiff alleges that denial of his girlfriend's visitation was "committed either on the instruction of defendants Ellis and Puentes . . . or with the knowledge and consent of these defendants, or w[as] thereafter approved and ratified by these defendants." Without factual support, the contentions are mere speculation. Plaintiff's unsupported legal conclusions are insufficient to establish a cognizable cause of action against defendants Ellis and Puentes. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. In the

absence of specific factual allegations linking Ellis and Puentes to denial of the girlfriend's

visitation, plaintiff cannot maintain *Bivens* claims against Ellis and Puentes.  Accordingly, Ellis

and Puentes are entitled to dismissal of the *Bivens* claims against them as a matter of law.

**Liability of Defendant Patrick.**  Plaintiff also alleges that defendant Patrick failed to

conduct an independent investigation of plaintiff's claims even after he received a letter written

on plaintiff's behalf by Senator Patty Murray of Washington.  Plaintiff provides no legal

authority for the novel proposition that prison officials are required to comply with the requests

of elected government officials regarding their management of individual inmates.

**Linking Defendants with Claims.**  Maintaining a *Bivens* claim requires an actual

connection or link between each defendant's actions and the harm allegedly done to the plaintiff.

*Iqbal*, 129 S.Ct. at 1948.  *See also Monell v. Department of Social Services*, 436 U.S. 658 (1978);

*Rizzo v. Goode*, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a

constitutional right, if he does an affirmative act, participates in another's affirmative act or omits

to perform an act which he is legally required to do that causes the deprivation of which

complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

A defendant cannot be liable unless an affirmative link or connection exists between that

defendant's actions and the claimed injury to plaintiff.  *May v. Enomoto*, 633 F.2d 164, 167 n. 3

(9th Cir. 1980); *Johnson*, 588 F.2d at 743.  To the extent that plaintiff's complaint fails to

adequately link each defendant's actions to the alleged claims, the claims is not cognizable.

**First Amendment Claim: Freedom of Association.**  Plaintiff alleges violation of his

First Amendment right of free association claiming that, by denying plaintiff visitation with his

girlfriend, the defendants violated his constitutional right of free association.  The Supreme Court

has not found an implied damages remedy under *Bivens* to a claim sounding in the First

Amendment.  *Iqbal*, 129 S.Ct. at 1948.  Even if *Bivens* liability extended to First Amendment

claims, plaintiff has failed to state a cognizable cause of action.

Not surprisingly, the complaint's vague allegation provides little insight into the basis of

this claim.  Plaintiff alleges only (1) that his girlfriend physically examined him while visiting on

November 4 and 5, 2005; (2) that a nearby prison guard observed the examination but that no

disciplinary action was taken against plaintiff; (3) that his girlfriend wrote a letter to Dr. Odeluga concerning his medical condition and her concern regarding further injury to plaintiff; (4) that plaintiff requested extended visitation with his girlfriend during her December visit; and (5) that his girlfriend was barred from visitation from December 2, 2005, through May 11, 2006.  Plaintiff does not allege how the asserted facts relate to the denial of visitation nor does he allege any rationale provided by any prison official for the denial of visitation.  In addition, the complaint fails to factually connect any defendant to plaintiff's girlfriend's being removed from the visitation list.  Simply put, this claim fails to satisfy the pleading standards set forth in *Iqbal* and *Twombly*.

Further, the complaint assumes that an inmate's right of visitation is self-evident.  That assumption is incorrect.  That prisoners have no right to unfettered visitation is settled law. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998).  Prisoners have no right to contact visitation.  *Barnett v. Centoni*, 31 F.3d 813, 817 (9th Cir. 1994) (per curiam); *Casey v. Lewis*, 4 F.3d 1516, 1523 (9th Cir. 1993).   Considering freedom of association in relation to prison visitation rules, the Supreme Court wrote:

> The very object of imprisonment is confinement.  Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner.  An inmate does not retain rights inconsistent with proper incarceration.  Some curtailment of that freedom must be expected in the prison context.

*Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (*internal citations omitted*). "The loss of the right to intimate association is simply part and parcel of being imprisoned for conviction of a crime."  *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir.), *cert. denied*, 537 U.S. 1039 (2002).

**First  Amendment Claim: Retaliation.**  Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  As previously noted, however, the Supreme Court has not recognized a claim sounding in the First Amendment

///

1  under *Bivens*. *Iqbal*, 129 S.Ct. at 1948.  Even if *Bivens* liability extended to First Amendment

2  claims, plaintiff has failed to state a cognizable cause of action.

3      "Within the prison context, a viable claim of First Amendment retaliation entails five basic

4  elements:  (1) an assertion that a state actor took some adverse action against an inmate (2)

5  because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

6  exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

7  correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  Plaintiff's

8  conclusory statements in paragraph 35 are not sufficient to state a claim of retaliation. *Iqbal*, 129

9  S.Ct. at 1949; *Twombly*, 550 U.S. at 555.  In addition, the complaint does not identify a specific

10  person or persons responsible for striking plaintiff's girlfriend from the list of eligible visitors.

11      Plaintiff's claim also fails to fit within the confines of impermissible retaliation.  Plaintiff

12  contends that defendants retaliated against him "for resorting to self help in his efforts to prevent

13  permanent injury to his person" and "his right to be free from retaliation for opposing a policy of

14  medical influence.  Retaliation is, at its heart, a violation of an inmate's First Amendment right to

15  free speech.  Plaintiff does not allege a free speech violation; plaintiff alleges that he was denied

16  visitation with his girlfriend.

17      "To establish a claim of retaliation under 42 U.S.C. § 1983, plaintiff must first establish

18  that he engaged in constitutionally protected activity." *Hines v. Gomez*, 853 F.Supp. 329, 330

19  (N.D.Cal. 1994).  *See also Mt. Healthy City School Dist. Board of Educ. v. Doyle*, 429 U.S. 274,

20  287 (1977).  Plaintiff's so-called "protected conduct" apparently consisted of his inducing or

21  allowing his physician-girlfriend to ignore contact restrictions and to physically examine him

22  through his clothing during her November visitation.  Plaintiff's characterization of his actions as

23  "resorting to self help in his efforts to prevent permanent injury to his person" is, in reality,

24  plaintiff's transparent attempt to justify his flouting of prison rules and procedures.  In any event,

25  nothing alleged in the complaint suggests that his girlfriend was removed from the visitation list

26  because of plaintiff's failure to conform to prison rules and procedures.

27      This court cannot discern what plaintiff means when he claims that he sought to "oppos[e]

28  a policy of medical influence."  Because plaintiff provides no factual support for his allegation, its

meaning cannot be determined from illustrative facts.  Other than inducing or permitting his girlfriend to break visitation rules and examine him in November, the complaint includes no evidence of plaintiff's protesting indifferent medical care before his girlfriend was stricken from the visitation list.  No physician or medical professional is named as a defendant.   No evidence supports a conclusion that any defendant was indifferent to needs and limitations imposed by plaintiff's pre-existing neck and back injuries.  Upon plaintiff's arrival at TCI, Dr. Odeluga prescribed a lower bed with double mattress, drug therapy, and work limitations, among other things. Plaintiff repeatedly consulted the nurse at sick call if he felt ill or was experiencing pain or discomfort.  That plaintiff's initial orderly position proved too demanding for plaintiff's physical limitations does not imply medical indifference but a mismatch between plaintiff's physical abilities and the job's requirements.  Despite his claims that his job caused him severe pain, plaintiff did not discuss the matter with his counselor, defendant Oliver, who was responsible for his job assignment, until late November.  Plaintiff's job assignment was changed the next day.

Further, because the complaint does not tie these actions to the December suspension of the girlfriend's visitation privileges in any way, this court cannot conclude that the girlfriend's visitation was suspended "because of" plaintiff's actions.  What the complaint alleges is that defendant Soto, plaintiff's unit manager, advised plaintiff that plaintiff's girlfriend had been removed from the visitor list because of her own actions: her letter to Dr. Odeluga.

Defendants point out that suspending the girlfriend from the visitation list was an action against her, not against plaintiff.   Their point is well taken.  To maintain security, prison officials must have the ability to regulate what persons may visit a particular inmate.  That is the purpose of each inmate's visitor list.  That a prospective visitor is denied visitation reflects the potential security risk posed by that person's visitation with the inmate, a matter frequently unrelated to the inmate's prison conduct.

We do not know what plaintiff's girlfriend wrote in her letter to Dr. Odeluga that resulted in suspension of her visiting privileges.  The complaint does not tell us.  The complaint does allege that, in November, plaintiff and his girlfriend ignored visitation rules, having the girlfriend "examine" plaintiff through his clothing, despite a nearby correctional officer's presence.  The

complaint emphasizes that the guard initiated no disciplinary action.  The complaint is silent on the letter's content.  It does not reveal whether the girlfriend disclosed the rule violation in the letter, bringing it to the attention of an official less likely to overlook the behavior than the nearby officer or less able to do so in the face of written evidence, but it also does not allege that the letter's contents were unobjectionable.

Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity.  *Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006); *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000); *see also Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007); *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007); *Bennett v. Hendrix*, 423 F.3d 1247, 1250-51 (11th Cir. 2005), *cert. denied*, 549 U.S. 809 (2006); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005); *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  Denying an inmate's girlfriend visitation is unlikely to chill a person of ordinary firmness from seeking medical care for a serious chronic condition or "opposing a policy of medical influence."  The sketchy facts set forth in the complaint simply do not support a conclusion that any defendant took any adverse action against plaintiff.

Even if the situation could somehow be interpreted as retaliation, the complaint alleges facts indicating that striking plaintiff's girlfriend from the visitation list did not deter plaintiff from exercising his First Amendment free speech rights.  After his girlfriend was denied visitation, plaintiff filed grievances, complained to the Bureau of Prisons, sought assistance from Senator Murray, and threatened federal litigation.  By doing so, he sought to accomplish his objectives by circumventing the prison hierarchy, bypassing prison grievance procedures and immediately seeking review by the Bureau of Prisons, and attempting to gain favored treatment through the influence of a government official. Plaintiff was not deterred from exercising his First Amendment rights.

Finally, the complaint includes no factual allegations suggesting that denying visitation to plaintiff's girlfriend visitation did not reasonably advance legitimate correctional goals.  A plaintiff alleging retaliation bears the burden of pleading an absence of legitimate correctional

1  goals for an alleged retaliatory action. *Sikorski v. Whorton*, 631 F.Supp.2d 1327, 1355 (D.Nev.

2  2009).  The complaint does not set forth a cognizable claim for retaliation.

3       **Due Process: Denial of Visitation.**  Violations of visitation rights are generally evaluated

4  under the Due Process Clause of the Fifth Amendment.  The Due Process Clause protects

5  prisoners from deprivation of life, liberty or property without due process of law.  *Kentucky Dep't*

6  *of Corr.*, 490 U.S. at 459-60.  To state a cause of action for deprivation of procedural due process,

7  a plaintiff must first establish the existence of a liberty interest for which the protection is sought.

8  Liberty interests may arise from the Due Process Clause itself or from state law.  *Meachum v.*

9  *Fano*, 427 U.S. 215, 223-27 (1976).

10       The Due Process Clause does not guarantee a right of unfettered visitation.  *See Kentucky*

11  *Dept. of Corr.*, 490 U.S. 460-61; *Keenan*, 83 F.3d at 1092.  "The denial of prison access to a

12  particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison

13  sentence,' and therefore is not independently protected by the Due Process Clause."  *Kentucky*

14  *Dep't of Corr.*, 490 U.S. at 460, *quoting Hewitt v. Helms*, 459 U.S. 460, 468 (1983).

15  Accordingly, plaintiff had no liberty interest in his girlfriend's visitation, and his due process

16  claim must fail as a matter of law.

17       **Cruel and Unusual Punishment.**  Plaintiff alleges that denying him visitation with his

18  girlfriend violated his Eight Amendment right to be free of cruel and unusual punishment.  The

19  Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane

20  conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006), *amended*

21  2006 WL 3437344 (9th Cir. November 30, 2006)(No.04-35608).  "[R]outine discomfort inherent

22  in the prison setting" does not rise to the level of a constitutional violation.  *Johnson v. Lewis*, 217

23  F.3d 726, 731 (9th Cir. 2000), *cert. denied*, 532 U.S. 1065 (2001).  "[T]he Constitution does not

24  mandate comfortable prisons."  *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).

25       This court's function is not to supervise the decisions of prison officials, but merely to

26  determine whether a constitutional violation has occurred.  *Hoptowit v. Ray*, 682 F.2d 1237, 1246

27  (9th Cir. 1982).  The court accords prison administrators "wide-ranging deference in the adoption

28  ///

1   of policies and practices that in their judgment are needed to preserve internal order and discipline

2   and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

3         Extreme deprivations are required to make out a conditions of confinement claim, and

4   only those deprivations denying the minimal civilized measure of life's necessities are sufficiently

5   grave to form the basis of an Eighth Amendment violation.  *Hudson v. McMillian*, 503 U.S. 1, 9

6   (1992) (*citations and quotations omitted*).  To state a claim for violation of the Eighth

7   Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew

8   of and disregarded a substantial risk of serious harm to the plaintiff.  *Farmer v. Brennan*, 511 U.S.

9   825, 847 (1994); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).   The circumstances,

10  nature, and duration of the deprivations are critical in determining whether the conditions

11  complained of are grave enough to form the basis of a viable Eighth Amendment claim.  *Johnson*,

12  217 F.3d at 731.  As recognized in the course of the due process analysis above, "The denial of

13  prison access to a particular visitor 'is well within the terms of confinement ordinarily

14  contemplated by a prison sentence." *Kentucky Dep't of Corr.*, 490 U.S. at 460, *quoting Hewitt*,

15  459 U.S. at 468.  Removing plaintiff's girlfriend from his visitor list did not violate the Eighth

16  Amendment prohibition against cruel and unusual punishment.

17  **IV.**   **State Claims**

18      **A.**   **Federal Court Jurisdiction**

19        Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original

20  jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the

21  action within such original jurisdiction that they form part of the same case or controversy under

22  Article III," except as provided in subsections (b) and (c).  "[O]nce judicial power exists under §

23  1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is

24  discretionary." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997).  "The district court

25  my decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the

26  district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367

27  (c)(3).  The Supreme Court has cautioned that "if the federal claims are dismissed before trial . . .

28  the state claims should be dismissed as well." *United Mine Workers of Amer. v. Gibbs*, 383 U.S.

715, 726 (1966).  Accordingly, had plaintiff stated a cognizable pendant state claim, this court could appropriately decline jurisdiction.  Plaintiff states no cognizable state claim.

**B.**     **Intentional Infliction of Emotional Distress**

Plaintiff alleges that by denying him visitation with his girlfriend, all defendants are liable for intentional infliction of emotional distress.  As with his federal constitutional claims, plaintiff's complaint fails to state a cognizable claim because it fails to tie any particular action on the part of any defendant to the alleged tort.  Even if the complaint had identified the appropriate defendant(s), however, it does not state a claim upon which relief may be granted.

"The elements of a cause of action for intentional infliction of emotional distress are: (1) defendant's outrageous conduct; (2) defendant's intention to cause, or reckless disregard of the probability of causing, emotional distress; (3) plaintiff's suffering severe or extreme emotional distress; (4) an actual and proximate causal link between the tortuous (outrageous conduct and the emotional distress." *Hillblom v. County of Fresno*, 539 F.Supp.2d 1192, 1210 (E.D.Cal. 2008). Outrageous conduct is conduct that is "so extreme as to exceed all bounds of that usually tolerated in a civilized Community." *Id.*, *quoting Davidson v. City of Westminster*, 32 Cal.3d 197, 209 (1982) (*citation and internal quotation omitted*).  "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Hillblom*, 539 F.Supp.2d at 1210.  Since prisoners have no right to unfettered visitation or to visitation with a particular individual, denying plaintiff visitation with his girlfriend fails to constitute outrageous conduct as a matter of law. *See Kentucky Dep't of Corr.*, 490 U.S. at 460; *Hewitt*, 459 U.S. at 468; *Keenan*, 83 F.3d at 1092.  As a result, plaintiff fails to state a cognizable claim of intentional infliction of emotional distress.

**C.**     **Negligent Hiring and Supervision**

"[I]n California, an employer can be held liable for negligent hiring if he knows the employee is unfit, or has reason to believe the employee is unfit or fails to use reasonable care to discover the employee's unfitness before hiring him." *Evan F. v. Hughson United Methodist Church*, 8 Cal.App.4th 828, 843 (1992)(*citations omitted*).  Liability for negligent supervision does not exist "in the absence of knowledge by the principal that the agent or servant was a person

1  who could not be trusted to act properly without being supervised." *Noble v. Sears, Roebuck &*

2  *Co.*, 33 Cal.App.3d 654, 664 (1973).  As a matter of law, hiring an employee does not constitute a

3  breach of an employer's limited duty to exercise due care in his selection of employees when

4  nothing exists to suggest that the prospective employee poses a threat to those he or she may

5  encounter in the course of the work.  *Federico v. Superior Court of Sacramento County*, 59

6  Cal.App.4th 1207, 1213 (1997).  Plaintiff does not allege that GEO negligently hired or

7  supervised any particular employee or group of employees; plaintiff alleges that, because GEO's

8  employees are poorly paid in order to maximize GEO's profits, GEO must have been negligently

9  hired and supervised its employees.  Plaintiff offers no factual basis for his remarkable

10  conclusion.  His allegations do not state a cause of action against GEO for negligent hiring or

11  supervision.

12  **V.      Defendants' Motion to Strike Punitive Damages Request**

13         In addition to seeking dismissal of plaintiff's *Bivens* and state law claims, the defendants

14  move to strike the request for punitive damages from plaintiff's complaint.  Because plaintiff has

15  failed to allege any cognizable *Bivens* or state claim, his complaint will be dismissed under

16  F.R.Civ.P. 12(b)(6) for failure to state a claim.  Therefore, striking the prayer for relief is

17  unnecessary, and the motion to strike will be dismissed as moot.[6]

18  **VI.     Conclusion and Recommendation**

19         Plaintiff's complaint fails to state a claim upon which relief may be granted under federal

20  or California state law.  The court hereby recommends that this action be dismissed, with

21  prejudice, for failure to state a claim.

22         These Findings and Recommendations will be submitted to the United States District

23  Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1).  Within **thirty (30)**

24  **days** after being served with these Findings and Recommendations, plaintiff may file written

25  objections with the court.  The document should be captioned "Objections to Magistrate Judge's

26  ///

27

28         [6]  To the extent that defendants argue that punitive damages were never available, the court rejects their
argument.  Punitive damages are available when a plaintiff alleges a cognizable *Bivens* claim.  *Nurse v. United
States*, 226 F.3d 996, 1005 (9th Cir. 2000).

1 Findings and Recommendations."  Plaintiff is advised that, by failing to file objections within the

2 specified time, he may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951

3 F.2d 1153 (9th Cir. 1991).

4

5 IT IS SO ORDERED.

6 **Dated:      October 14, 2009**                          **/s/ Sandra M. Snyder**
                                                              UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28